**GRABILL CABINET COMPANY, INC., Appellant/Plaintiff,**

v.

**Debra C. SULLIVAN, Appellee/Defendant.**

**No. 02A03–0908–CV–399.**

Court of Appeals of Indiana.

Jan. 14, 2010.

---

Robert W. Eherenman, Melanie L. Farr, Haller & Colvin, P.C., Fort Wayne, IN, Attorneys for Appellant.

John R. Burns, Kyle B. Osting, Baker & Daniels LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Plaintiff Grabill Cabinet Company appeals from the trial court's grant of summary judgment in favor of Appellee/Defendant Debra Sullivan. We reverse and remand with instructions.

## FACTS

Sullivan is a former manager and member of Kitchens, Baths, & More, LLC ("KBM"), a Florida company. On May 18, 2006, KBM submitted a credit application to Grabill, which application listed Sullivan as president and accounts payable contact for KBM. Also on May 18, 2006, Sullivan and Richard Knoll signed a personal guaranty of any KBM debt that it might accrue to Grabill. The guaranty reads in relevant part as follows:

> FOR VALUE RECEIVED and to enable *Kitchens Baths + More*, hereinafter called "Debtor", to obtain credit, from time to time, from GRABILL CABINET CO., an Indiana Corporation, of Grabill, Indiana, hereinafter called "Grabill", the undersigned all being officers and/or shareholders of Debtor and all personally benefitting by Grabill, each hereby individually and unconditionally guarantee full and prompt payment when due, and at all times thereafter, of any and all indebtedness and liabilities of every nature and kind, hereof and hereafter incurred, including all renewals, modifications, and extensions thereof, which are now owing or which may hereafter, from time to time, become owing by the Debtor to Grabill, without limit, together with interest thereon, and the undersigned further agree to pay, in addition thereto, all costs and expenses, including reasonable attorney fees, at any time paid or incurred in endeavoring to collect said indebtedness.
>
> The undersigned waive notice of the acceptance of this Guaranty and all extensions of Credit hereunder....
>
> This Guaranty is made and shall continue as to any and all of said indebtedness and liabilities incurred or arising prior to receipt of Grabill of written notice of termination hereof from the undersigned, whether or not such evidence of indebtedness refers to this Guaranty....

Appellant's App. p. 22. The guaranty was signed by Sullivan and Knoll as individuals but was not signed by any persons in their capacity as representatives of either Grabill or KBM.

In September of 2006, Sullivan assigned her interest in KBM to Knoll and resigned from the company. Sullivan did not send notice to Grabill of termination of her personal guaranty. In May and June of 2008, KBM ordered cabinets and accessories from Grabill, accumulating a balance of $52,212.26. On August 10, 2008, Grabill filed suit against KBM, Knoll, and Sullivan, seeking to collect the balance from KBM or, failing that, Knoll and Sullivan pursuant to their personal guaranty. On October 10, 2008, the trial court entered default judgment in favor of Grabill against KBM and Knoll.

On January 23, 2009, Grabill filed a summary judgment motion against Sullivan,

which the trial court denied on April 17, 2009, on the basis that the guaranty was defective because it was not signed by KBM or Grabill. On April 27, 2009, Grabill filed a motion to reconsider, to which Sullivan responded with a summary judgment cross-motion on May 7, 2009. On July 31, 2009, the trial court granted summary judgment in favor of Sullivan, again on the ground that the personal guaranty was "defective on its face pursuant to Indiana law."

## DISCUSSION AND DECISION

### Whether the Trial Court Erred in Granting Summary Judgment in Favor of Sullivan

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

### Indiana Law Regarding Guaranties

■ "A guaranty is defined as 'a promise to answer for the debt, default, or miscarriage of another person.'" *S–Mart, Inc. v. Sweetwater Coffee Co.*, 744 N.E.2d 580, 585 (Ind.Ct.App.2001) (citation omit-

ted), *trans. denied.* "It 'is an agreement collateral to the debt itself and represents a 'conditional promise' whereby the guarantor promises to pay only if the principal debtor fails to pay." *Id.* (citation omitted).

■ A continuing guaranty is defined as a guaranty that:

"contemplates a future course of dealing encompassing a series of transactions. . . . [A] contract is continuing if it contemplates a future course of dealing during an indefinite period, or if it is intended to cover a series of transactions or succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. A continuing guaranty covers all transactions, including those arising in the future, which are within the contemplation of the agreement."

38 Am.Jur.2d Guaranty § 20 (1999) (emphasis added); *see also Vidimos, Inc. v. Vidimos*, 456 N.E.2d 455, 458 (Ind.Ct.App.1983) ("continuing guaranty is not limited to single transaction, but contemplates a future course of dealing encompassing a series of transactions"). Moreover, a continuing guaranty "is not limited in time or amount and is operative until revoked." 49 Am.Jur.2d Landlord and Tenant § 819 (1995).

The rules governing the interpretation and construction of contracts generally apply to the interpretation and construction of a guaranty contract. *Kordick v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, 123 (Ind. Ct.App.1986). The extent of a guarantor's liability is determined by the terms of his or her contract. *Id.* The terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within its terms. *Id.* The contract of a guarantor is to be

construed based upon the intent of the parties, which is ascertained from the instrument itself read in light of the surrounding circumstances. *Skrypek v. St. Joseph Valley Bank*, 469 N.E.2d 774, 776 (Ind.Ct.App.1984); *Orange–Co., Inc. v. Brown*, 181 Ind.App. 536, 393 N.E.2d 192, 195 (1979).

A guarantor's liability will not be extended by implication beyond the terms of his or her contract. *Goeke v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 467 N.E.2d 760, 765 (Ind.Ct. App.1984), trans. denied (1985). "A guarantor is a favorite in the law and is not bound beyond the strict terms of the engagement. Moreover, a guaranty of a particular debt does not extend to other indebtedness not within the manifest intention of the parties." *Id.*

*Id.* at 585–86.

Indiana's Statute of Frauds provides in part as follows:

A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

. . . .

(2) An action charging any person, upon any special promise, to answer for the debt, default, or miscarriage of another.

Ind.Code § 32–21–1–1(b) (2005).

■ The language of Sullivan's guaranty could not be more clear. "If the language of [an] instrument is unambiguous, the intent of the parties is determined from the four corners of that instrument." *Peoples Bank & Trust Co. v. Price*, 714

N.E.2d 712, 716 (Ind.Ct.App.1999), *trans. denied.* Sullivan's guaranty "is made and shall continue as to any and all of said indebtedness and liabilities incurred or arising prior to receipt of Grabill of written notice of termination hereof from the undersigned[.]" Appellant's App. p. 22. The guaranty does not contain any provision for automatic termination should Sullivan leave KBM, and it is undisputed that she never sent Grabill written notice of termination. Sullivan, however, contends that the guaranty is invalid because Grabill never signed it.

We cannot agree with Sullivan on this point. Although the Statute of Frauds requires a guaranty to be in writing, only the "party against whom the action is brought" need sign it, and that requirement has been met here. *See* Ind.Code § 32–21–1–1(b). Indeed, this seems to be one of those propositions so well-settled in Indiana law that it is difficult to find recent cases restating it. Our Statute of Frauds has existed in substantially the same form, at least as it pertains to guaranties, for well over a century. *See, e.g., Drake v. Markle*, 21 Ind. 433, 436 (1863) ("The statute of frauds provides, that 'no action shall be brought * * to charge any person, upon any special promise, to answer for the debt, default or miscarriage of another, * * * unless the promise, contract, or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the person to be charged therewith[.]' "); *see also Graham v. Henderson Elevator Co.*, 60 Ind.App. 697, 703, 111 N.E. 332, 335 (1916) (' "The party to be charged', under the statute of frauds, means the defendant to the action. The memorandum must be signed by him but need not, necessarily be signed by the plaintiff in the suit." [1]). Grabill's failure to

---

**1.** The version of this citation found in the *www.westlaw.com* database places the comma inside the quotation mark following the word "charged," includes a comma following the

sign the guaranty does not render it invalid.

Sullivan relies on the proposition that Indiana case law, although in conflict with the Statute of Frauds, requires three parties to "execute" a guaranty for it to be valid. *See, e.g., S–Mart,* 744 N.E.2d at 585. First, Sullivan cites to no authority holding that signing a written guaranty is equivalent to, or necessary for, "execution" of that guaranty. Black's Law Dictionary defines "execution" of a contact as "includ[ing] performance of all acts necessary to render [a contract] complete as an instrument and imports idea that nothing remains to be done to make complete and effective contract." BLACK'S LAW DICTIONARY 568 (6th ed.1990). Quite simply, the Statute of Frauds makes it clear that only the guarantor's signature is necessary to render a guaranty a complete instrument.

Second, the proposition that three parties must execute a guaranty, even if one assumes that "execution" requires a signature, has only ever appeared three times in Indiana case law and then only as dicta. In *S–Mart,* 744 N.E.2d at 580, *Smith v. McLeod Distributing, Inc.,* 744 N.E.2d 459 (Ind.Ct.App.2000), and *Kordick,* 496 N.E.2d at 119, however, the question of which parties were required to sign a guaranty instrument was not addressed or even mentioned. Moreover, the proposition is based on what we conclude to be a slight misreading of Indiana precedent. *S–Mart* and *Smith* both rely on Kordick for the proposition that the obligor, obligee, and guarantor must all execute a guaranty. *S–Mart,* 744 N.E.2d at 585; *Smith,* 744 N.E.2d at 465. Kordick, in turn, relies on *Indianapolis Morris Plan Corp. v. Sparks,* 132 Ind.App. 145, 172 N.E.2d 899 (1961). *Indianapolis Morris Plan,* as with the cases mentioned above,

did not address or even mention the question of which parties signed the instrument at issue and, more importantly, contains no language suggesting, much less holding, that all three parties must sign a guaranty. Without a pinpoint citation, we can only assume that the *Kordick* court relied on the following passage from *Indianapolis Morris Plan:*

> A guaranty requires a third party (the surety or guarantor) who promises to pay the debt or default of another (the obligor) which is owing to the obligee.
>
> 'A guaranty is an independent contract, by which the guarantor undertakes in writing, upon a sufficient consideration, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person, who is primarily liable to pay or perform.'

*Indpls. Morris Plan,* 132 Ind.App. at 151, 172 N.E.2d at 902 (citation omitted). As can be seen, there is nothing in this language to justify a conclusion that all three parties to a guaranty are required to sign it.

■ Third, it is worth noting that all three of the opinions arguably grafting a signing requirement onto guaranties came from this Court and conflict not only with the plain language of the Statute of Frauds but also with consistent Indiana Supreme Court precedent.

> We are bound by the decisions of our supreme court. *See In re Petition to Transfer Appeals,* 202 Ind. 365, 376, 174 N.E. 812, 817 (1931). Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. *Id.* While Indiana Appellate Rule 65(A) authorizes this Court to criticize existing law, it is not this

word "him," omits the comma following the word "not," and misspells "need" as "neet." While the errors would not seem to alter the

meaning of the citation, we will continue to exercise caution in citing to non-official authorities.

court's role to "reconsider" supreme court decisions.

*Dragon v. State,* 774 N.E.2d 103, 107 (Ind. Ct.App.2002), *trans. denied.* The Indiana Supreme Court has never wavered from the statutorily-mandated proposition that a guaranty need only be in writing and signed by the guarantor in order to be valid. *See, e.g., Everly v. Equitable Surety Co.,* 190 Ind. 274, 279, 130 N.E. 227, 229 (1921) ("A contract 'to charge any person, upon any special promise, to answer for the debt, default or miscarriage of another' must be 'in writing, and signed by the party to be charged therewith.'" [2]); *Parker v. Dillingham,* 129 Ind. 542, 545, 29 N.E. 23, 24 (1891) ("[N]o action shall be brought to charge any person, upon any special promise, to answer for the debt, default or miscarriage of another, unless the promise, contract, or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith[.]" [3]); *Grinestaff v. State,* 53 Ind. 238, 239–40 (1876) ("[N]o action shall be brought 'to charge any person, upon any special promise, to answer for the debt, default, or miscarriage of another,' unless the promise, etc., shall be in writing, and signed by the party to be charged therewith[.]"). If the Indiana Supreme Court wishes to graft new signing requirements onto guaranties beyond those mentioned in the Statute of Frauds, it may do so. As yet, however, the Court has not, and we are absolutely bound by its decisions in this regard.

■■■ Finally, even if we assume that Grabill *was* required by case law to sign the guaranty in order to make it valid, we conclude that Sullivan waived such a requirement when she waived notice of acceptance of the guaranty. In Indiana, the freedom of parties to contract is favored to the extent that it has been held to be among those freedoms protected by Article 1, section 1, of the Indiana Constitution. See *Kirtley v. State,* 227 Ind. 175, 180, 84 N.E.2d 712, 714 (1949) ("The privilege of contracting is both a liberty and a property right and is protected by the constitution of both the state and nation.").

> The courts will keep in mind the principle that it is to the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract and that their agreements are not to be held void as against public policy, unless they are clearly contrary to what the constitution, the legislature, or the judiciary have declared to be the public policy or unless they clearly tend to the injury of the public in some way.

*Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 279 (Ind.1983) (citing *Hodnick v. Fidelity Trust Co.,* 96 Ind.App. 342, 350, 183 N.E. 488, 491 (1932)). Sullivan advances no public policy argument why her waiver of notice of acceptance should be not given effect, and we can think of none. Even if Grabill's signature had been required, Sullivan waived the right to require it.

In light of the clear language of the Statute of Frauds and Indiana Supreme Court precedent regarding guaranties, we are compelled to reverse the trial court's entry of summary judgment in favor of Sullivan and its denial of Grabill's motion to reconsider the denial of Grabill's summary judgment motion. We remand for entry of summary judgment in favor of Grabill on the issue of the enforceability of

---

2. The version of this citation found in the *www.westlaw.com* database adds a comma following the word "default" and inexplicably substitutes three asterisks for the word "and."

3. The version of this citation found in the *www.westlaw.com* database adds commas following the words "default" and "writing."

the guaranty and for calculation of Grabill's award.

We reverse the judgment of the trial court and remand with instructions.

NAJAM, J., and FRIEDLANDER, J., concur.